The New York Times
nytimes.com

PRINTER-FRIENDLY FORMAT SPONSORED BY W

June 12, 2006

# U.S. Asks Judge to Drop Suit on N.S.A. Spying

By ADAM LIPTAK

DETROIT, June 12 — A National Security Agency program that listens in on international communications involving people in the United States is both vital to national security and permitted by the Constitution, a government lawyer told a judge here today in the first major court argument on the program.

But, the lawyer went on, addressing Judge Anna Diggs Taylor of the Federal District Court, "the evidence we need to demonstrate to you that it lawful cannot be disclosed without that process itself causing grave harm to United States national security."

The only solution to this impasse, the lawyer, Anthony J. Coppolino, said, was for Judge Taylor to dismiss the lawsuit before her, an American Civil Liberties Union challenge to the eavesdropping program, under the state secrets privilege. The privilege can limit and even extinguish cases that would reveal national security information, and it is fast becoming one of the Justice Department's favorite tools in defending court challenges to its efforts to combat terrorism.

The Detroit case was filed in January on behalf of journalists, scholars, lawyers and nonprofit organizations who contended that the possibility of government eavesdropping interfered with their work. In remarks to reporters after the 90-minute argument, Anthony D. Romero, the A.C.L.U.'s executive director, called the government's invocation of the state secrets privilege "Orwellian doublespeak."

"They argued essentially that the N.S.A. program was off-limits to judicial review," Mr. Romero said.

The small courtroom was jammed for the argument, with a dozen people standing in the aisles and journalists sitting in the jury box.

In her presentation, Ann Beeson, the A.C.L.U.'s associate legal director, asked Judge Taylor to shut down the surveillance program based on publicly available information.

The case boiled down to two legal questions, Ms. Beeson said. The first is whether the plaintiffs have suffered the sort of direct injury necessary to establish that they have standing to bring suit. The second is whether President Bush was authorized by Congress or by the Constitution to violate the Foreign Intelligence Surveillance Act, a 1978 law that forbids surveillance of people inside the United States without a warrant.

PLAINTIFF'S EXHIBIT C

The Bush administration has acknowledged that it has not complied with the law but has said that a Congressional authorization in 2001 to use military force against Al Qaeda and the president's inherent constitutional powers allowed him to violate it.

The government's main argument today, repeated numerous times, was that more facts are required in the case but that more facts cannot be disclosed. Judge Taylor asked few questions but at one point appeared frustrated by this approach.

"You have conceded, have you not, that a program has been authorized?" she asked Mr. Coppolino. He responded that the administration's public defense of the program has been too general to serve as the basis for judicial adjudication. "There is very much a difference," Mr. Coppolino said, "between the existence of an activity and the details of that activity."

Even portions of the government's brief that were said to demonstrate why further information about the program cannot be disclosed have not been filed in court. Instead, the government "lodged" the brief and other classified papers at the Justice Department in Washington, inviting Judge Taylor to make arrangements to see them. At today's hearing, she shook her head no when Mr. Coppolino asked her whether she had "had a chance to review our classified submission."

Judge Taylor has scheduled a separate argument next month to consider the government's motion to dismiss the case based on the state secrets privilege. While she could theoretically rule on the plaintiffs' request to block the program before then, she is more likely to consider the two motions simultaneously.

Calling the plaintiffs' position extreme, Mr. Coppolino said the 1978 law cannot constitutionally constrain the president when the nation's safety is at risk.

"The president's constitutional power doesn't simply disappear when Congress enacts a statute," Mr. Coppolino said. "Surveillance of an enemy is indeed a necessary incident of war."

Ms. Beeson said the 1978 law, often called FISA, gave the president all the flexibility he needed. "If FISA didn't work," she said, "the proper procedure under our constitutional system was for the president to go back to Congress and ask it to amend the law."

"Our constitutional system was set up to require the president to follow the law just like anyone else," she added. "If our view of the separation of powers is extreme, then the Constitution is extreme."

Mr. Coppolino also argued that the plaintiffs were not entitled to sue in the first place because they cannot show they have been injured. "You don't get standing," he said, "simply because you say the president has a program and I think it might cover me."

Ms. Beeson countered that her clients have suffered concrete harms. "Journalists' sources have dried up," she said. And lawyers for people suspected of terrorism have had to resort to alternatives to phone calls and e-mails to ensure the confidentiality of their communications, she said. "They have had to make expensive oversees trips to gather evidence," Ms. Beeson said.

Mr. Coppolino said the government is not able clarify whether the plaintiffs' fears are justified. "The government cannot confirm or deny whether a particular individual is subject to surveillance or what the criteria is," he said. "Indicating that someone is not subject to surveillance is itself revealing."

Mr. Coppolino indicated that some plaintiffs may have more reason to be concerned than others. Lawyers who represent suspected terrorists, he said, "come closer to being in the ballpark of the terrorist surveillance program."

But here too, he said, "the critical facts necessary to adjudicate" the standing question "are subject to the state secrets privilege."

As Ms. Beeson concluded her argument, which had been uninterrupted by questions, Judge Taylor called her back to the lectern. "Talk about standing some more," Judge Taylor said, perhaps identifying the part of the plaintiffs' case she considered the most difficult.

Copyright 2006 The New York Times Company